## THE RAHWAY.[1]

### MILLARD et al. v. THE RAHWAY.

### JAYNE v. SAME.

### WINNETT et al. v. SAME.

*(District Court, E. D. New York. June 10, 1891.)*

SALVAGE — FIRE ON COTTON VESSEL — PRESENCE OF TUGS BELONGING TO OWNER OF BURNING VESSEL.

A lighter loaded with cotton and flour caught fire about half past 1 o'clock in the morning, while lying at a pier. The tug A. immediately made fast to her, and towed her into the stream, at the same time pumping water on the fire. Shortly after being towed into the stream, the barge was surrounded by tugs belonging to the owner of the barge, and as able as the A. to do all that might thereafter be required. The tug T., belonging to other owners, also arrived at 2 o'clock, and the tug H. came at 7:30 in the morning, and was told that her services were not required, notwithstanding which she put on a stream of water. The barge was finally sunk, to extinguish the fire. The value of the property saved was $21,-587.50. The value of the A. was $15,000. The time of her service was rather more than 24 hours. The risk to her was small. *Held*, that the A. should recover $2,000 as salvage, the T. $500, and the H. nothing at all.

In Admiralty. Consolidated suits to recover salvage compensation.

*Wilcox, Adams & Macklin*, for Millard & Winnett.

*Peter S. Carter*, for Jayne.

*Robinson, Bright, Biddle & Ward*, for claimant.

BENEDICT, J. These three actions consolidated are brought to recover salvage compensation for services rendered to the barge Rahway and cargo on the 13th of December, 1890. The material facts are as follows: On the morning of December 13, 1890, the barge Rahway, belonging to the Pennsylvania Railroad Company, and laden with a cargo consisting of 691 bales of cotton on deck and 43 bales of cotton and 300 bags and 150 barrels of flour in the hold, was lying moored at pier 39, East river. The weather was cold, and a strong wind was blowing. About half past 1 in the morning fire was discovered in the cotton on the barge by a watchman on the adjoining dock, and very shortly the whole barge was enveloped in flames. The tug Adelaide, observing the fire, proceeded immediately to render assistance. Upon arriving at the burning barge she made fast to her at once, and towed her away from the docks into the stream, meanwhile pumping water on the fire. It was about 1:45 in the morning when the barge was towed into the stream by the Adelaide. The two boats then drifted down the East river, the Adelaide pumping water on the fire. At 1:50 the city fire-boat Havemeyer came along-side the barge, and commenced to throw water. At 1:55 the tug Uncle Abe, owned by the Pennsylvania Railroad Company, came along-side, and began to throw water upon the fire. At 2 o'clock, and

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

when the burning barge was about entering the North river, the tug Talisman arrived along-side, and commenced to throw water upon the fire. At about the same time the Lowell M. Palmer arrived; but, upon seeing that it was a Pennsylvania Railroad barge, she forthwith departed. At 2:20 the Pennsylvania Railroad Company's tug Belvidere arrived. When the barge had drifted below Governor's island, the Adelaide made a line fast to her, and towed her into the Erie basin,—the tugs Uncle Abe, Talisman, and Belvidere being along-side at the time; and at that time the fire was supposed to have been extinguished. This was about 5 o'clock in the morning. The Havemeyer had left at about 3 o'clock, under the impression that the fire was extinguished. But after the barge was towed into the Erie Basin, the fire burst out again. At 3:20 the Pennsylvania Railroad Company's tug Pittsburgh arrived. At 7:20 the Henry H. Hohen. At 11:30 the Pennsylvania Railroad Company's steam lighter Transit arrived, and in the evening the Pennsylvania Railroad Company's steam lighter Despatch arrived. Although deluged by water from these tugs, the fire was not put out, and the appearance became so threatening that the agent of the Pennsylvania Railroad Company, who seems to have arrived and taken charge, determined to sink the barge in order to extinguish the fire. This was done by filling her with water, and in this way the fire was finally extinguished. The sound value of the cotton on board the barge was $43,000; the sound value of the flour, $1,300; the sound value of the barge, $6,000,—making a total value of property at risk, $50,300. The value of the property saved was, of the barge and machinery, $2,050; of the cotton, $18,-888.11; flour, $649.39,—making a total value of property saved, $21,-587.50. No salvage compensation is claimed in behalf of the vessels that came to the assistance of the barge except the tugs Adelaide, Talisman, and Henry Hohen. It is conceded that salvage services were rendered by the Adelaide and Talisman; the right of the Hohen to salvage is denied.

Upon the evidence I am of the opinion that, in all probability, if the Adelaide had not come to the assistance of the barge as she did, both the barge and cargo would have been substantially destroyed; for there were no appliances upon the dock for extinguishing the fire, the barge had no means whereby to extinguish fire, and was without locomotive power of her own, so that it would not have been possible for the fire to have been extinguished by any means there present. The Adelaide arrived promptly, and by her prompt service the barge was moved into the stream, where she and the other tugs that arrived could throw water upon the fire. The situation presents this peculiarity: that, shortly after the Adelaide had towed the barge into the stream, the barge was surrounded by tugs belonging to the owners of the barge, and as able as the Adelaide to throw water, and do all that might thereafter be required, so that, if the Adelaide had then surrendered the possession of the barge to the tugs belonging to the same owner there present, no increase of risk would have followed. Undoubtedly, the Adelaide, having taken possession of the tug as a salvor, and being able to tow and to

throw water, was entitled to retain her custody of the barge until the need of assistance ceased. But after the barge reached the stream, the assistance needed consisted for the most part in pumping water. The powerful pumps belonging to the Pennsylvania Railroad Company's tugs, which came to the assistance of the barge, supplied not only valuable, but necessary, assistance. The important part of the service rendered by the Adelaide was that rendered in promptly towing the barge out into the stream, away from the piers, and promptly pumping water at the beginning of the fire. Her services after the barge reached the stream were no more valuable than the services rendered by the other tugs then present; and, owing to the presence of these tugs, the services of the Adelaide from that time were not necessary to the salvation of the property. The circumstances to be considered, therefore, in determining the amount of salvage award to the Adelaide are the promptness of the service rendered by the Adelaide in the moment of greatest distress and peril, the efficiency of the services afterwards rendered by her, and the successful result attained. This service involved little risk to the Adelaide, and called for no great display of daring on her part. The value of the Adelaide was $15,000, the time occupied was from 1:45 in the morning to about 3 o'clock in the afternoon; while, on the other hand, the fact is to be considered that other tugs belonging to the owner of the barge, and able to do all thereafter required to be done, were present, and acted with the Adelaide in saving the property.

Taking all the circumstances into consideration, I am of the opinion that justice will be done by awarding to the owners and crew of the Adelaide the sum of $2,000, for the services rendered by the Adelaide on the occasion in question; the same to be divided, one-half to the owners of the Adelaide, and the other half to be divided among the officers and crew in proportion to their respective wages.

The Talisman is also entitled to salvage compensation. She arrived at the barge at 2 A. M., when the barge had drifted into the North river, and after not only the Adelaide, but also the fire-boat Havemeyer and the Pennsylvania Railroad boat Uncle Abe had come to the assistance of the barge. Notwithstanding the presence of these tugs, the aid of the Talisman was welcomed, and she threw water on the fire from the time of her arrival until 9:30 A. M. She applied her water directly to the fire, and some risk was assumed by her crew in remaining upon the burning cotton with the hose, as appears by the fact that one of the Talisman's deck-hands, named George Anderson, refused to go upon the cotton with the hose. His place was taken by another deck-hand named Halvorsen, who stayed upon the cotton during four hours, handling the Talisman's hose, and suffering considerably from the cold water, which froze upon his oil skins as he stood. To this man, Halvorsen, a double portion of the salvage awarded to the crew of the Talisman will be paid, and the man George Anderson is not permitted to share in the salvage award. For the services of the tug Talisman and her officers and crew the sum of $500 is awarded, one-half to be paid to the owners of the tug,

and the remainder to be divided among the officers and crew present at rendition of the salvage service, in proportion to their wages.

I do not consider the Henry W. Hohen entitled to salvage compensation. She did not arrive until 7:30 A. M. Then her services were not required. The Uncle Abe had already left, and the Hohen was told that her services were not required. She did afterwards put on a stream, but cannot be held to have rendered any necessary or valuable service. Her libel is therefore dismissed, but without costs.